**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **TROY HANENKRATT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| **CITY OF INDEPENDENCE** | ) | |
| Serve: | ) | |
| Mayor Rory Rowland | ) | |
| 111 E. Maple, | ) | |
| Independence, Missouri 64050 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Troy Hanenkratt, by and through the undersigned counsel, and, for his cause of action against Defendant City of Independence, states and alleges as follows:

## PARTIES

1.      Plaintiff is now and was, at all times relevant to the allegations in this Complaint, a resident and citizen of Missouri.

2.      Plaintiff is an employee of Defendant City of Independence and Plaintiff's claims arise from his service as an employee of the City of Independence.

3.      Defendant, City of Independence, is a Missouri municipality with its primary place of business located at 111 E. Maple Ave., Independence, Missouri 64050.  Defendant may be served with process through the Mayor, City Attorney or City Clerk.

## JURISDICTION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      Plaintiff's causes of action are filed against the Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC§ 2000e, et seq.

5.      On April 24, 2023, Plaintiff filed a Charge of Discrimination against the Defendant. See Ex. A., Charge of Discrimination in which he asserted claims of discrimination based upon sex, age, associational discrimination and retaliation.  Plaintiff further alleged that such acts were ongoing and continuous.  Plaintiff's Charge of Discrimination was dually filed with the Missouri Commission on Human Rights and the EEOC.

6.      Because Plaintiff is asserting a cause of action pursuant to Federal Law, this Court has original Federal jurisdiction pursuant to 28 USC §1331.

7.      On March 17, 2025, Plaintiff received a Notice of Right to Sue from the United States Department of Justice Civil Rights Division.  This action has been filed within 90 days of Plaintiff's receipt of his Notice of Right to Sue. See Ex. B., Notice of Right to Sue.

## FACTUAL ALLEGATIONS

8.      Plaintiff is 53 years old.

9.      Plaintiff is employed as a major with the City of Independence, Police Department.

10.      Plaintiff has been employed by Defendant for over 30 years.

## Captain Adam Dustman Is Promoted To Interim Acting Chief of Police Over Other More Qualified Candidates

11.      In July of 2022, Acting Chief of Police Ken Jarnagin was placed on administrative leave and a midnight patrol captain, Adam Dustman, was promoted to the position of acting chief of police bypassing the ranks of major and deputy chief and further being promoted ahead of other officers with more experience and tenure.

2

12.     At the time of his surprise promotion, Acting Chief Dustman was under the age of 40 and the qualified officers on the command staff including Deputy Chief Jarnagin were over the age of 50.

13.     Deputy Chief Ken Jarnagin, who had been acting Chief, was placed on administrative leave because of an overtime investigation. Deputy Chief Jarnagin was cleared of any wrongdoing associated with the overtime investigation, nevertheless he was on leave for months while the overtime investigation was conducted.

14.     Upon information and belief, the overtime investigation was used by City Manager Zach Walker to bring about a change in leadership in the police department. Specifically, City Manager Walker wanted to replace the older, command staff of the police department with officers, who were more willing to allow Mr. Walker to control the Police Department. These officers tended to be younger or aligned with Acting Chief Dustman.

15.     Upon information and belief, when the senior command staff members questioned why a Captain had been promoted out of rank to Acting Chief of Police, the senior officers were told in a blunt manner that City Manager Walker did not support them.

16.     Ironically, the overtime investigation resulted in a recommendation from the City's investigator that the Police Department have a dedicated human resources representative to ensure that the Police Department complies with employment laws.

17.     Upon information and belief, the City has never provided the Police Department with a dedicated, independent human resources representative to advise the department on compliance with human resources law.

3

18.     In fact, the City appears to have gutted the human resources department. Upon information and belief, a decimated human resources department has allowed the City to engage in hiring and promotion practices that violate City Charter and City Policy.

19.     As a result of the overtime investigation the Defendant City has rushed to implement changes that cut the pay of officers including removal of commander time and removal of certain shift differentials.

20.     Upon information and belief, members of the City Council expressed concerns that, then Acting Chief, Adam Dustman lacked the experience necessary to serve as Chief and, if the promotion was made he would need a human resources consultant or representative.

21.     If this advice was given, it has not been followed.

22.     The result of allowing an inexperienced Captain and the City Manager to operate the Police Department without any oversight is at least 10 lawsuits alleging ongoing discrimination, harassment, hostile work environment and retaliation in the City's Police Department virtually all of which are directly linked to the actions of Chief Adam Dustman.

**Chief Adam Dustman and City Manager Zach Walker Violate the City Charter's Merit Based Hiring Requirements In Granting Promotions**

23.     By Charter, the City of Independence requires that all hiring, and promotion decisions be based solely upon "merit". The City of Independence has enacted, through ordinance, personnel policies and procedures to effectuate the merit-based hiring system.

24.     The merit-based hiring system is intended to prevent favoritism, discrimination and cronyism in the hiring and promotion process.

25.     The merit-based hiring system is intended to prevent illegal factors from governing the selection and promotion of employees.

4

26.     Hiring and promotional decisions are to be based on the best qualified individual for the position.  To accomplish this, the City has adopted policies mandating the Personnel Director participate in the hiring and promotion process to ensure that all testing and interviews are job related and in furtherance of the merit-based hiring system.

27.     The City has adopted detailed Policies and Procedures that are intended to prevent the manipulation of the hiring process; however, Chief Dustman and City Manager Zach Walker ignored the hiring and promotion policies to push through candidates because of gender or alignment, not merit.

28.     In 2022, while still acting Chief of Police Dustman was allowed by the City to promote an officer to the position of Major.

29.     The City previously denied this right to the prior acting chief of police, Deputy Chief Ken Jarnagin.  Accordingly, Deputy Chief Jarnagin, who was over 50, was denied the right to fill the major position, but Acting Chief Dustman, who was under the age of 40 was allowed to fill this position.

30.     The City of Independence told Deputy Chief Jarnagin that he was not permitted to promote an officer to major until the City of Independence hired a new Chief of Police. The City did not take this position when Acting Chief Dustman sought to promote an officer to major.  Upon information and belief, the Personnel Director suggested that the City remain consistent with its decision making but the City Manager rejected the Personnel Director's advice to avoid acting in a discriminatory manner.

31.     In April of 2022, Acting Deputy Chief Dustman announced the opening for a major. The position was posted for a short time.  Additionally, the requirements for promotion to major were dramatically altered.

5

32.     Specifically, acting Chief of Police Dustman unilaterally altered the requirement that all candidates for the position have served as a captain for at least a year.

33.     The Police Department had a General Order requiring that all applicants for major first serve as a captain prior to applying for major, Acting Chief Dustman did not follow this requirement and did not amend the General Order through a formal or discernable process.

34.     Upon information and belief, the Captains who may have been considered eligible for the promotion, including Plaintiff, were considered aligned with Deputy Chief Jarnagin and, thus, the surreptitious changes to the qualifications were intended to expand the pool of applicants to include individuals that City Manager Walker and Acting Chief Dustman wanted to promote.

35.     Upon information and belief, Acting Chief of Police Dustman appears to have wholly excluded the Personnel Director from involvement in the hiring process in violation of the City Charter and the City's Personnel Policies and Procedures.

36.     Specifically, Acting Chief Dustman reviewed and vetted all candidates for the positions of major while by policy this task should have been performed by the Personnel Director.

37.     Acting Chief Dustman, interviewed all candidates without the participation of the Personnel Director in violation of policy.

38.     Acting Chief Dustman ranked the candidates and made the recommendation to the City Manager all of which are supposed to be performed by the Personnel Director.

39.     Upon information and belief, the new position was tailored to permit the promotion of Acting Chief Dustman's close friend.

40.     Ultimately, Acting Chief Dustman's friend was promoted to major over two qualified candidates, who had served as Captains.

6

**The Promotion Process Generates Complaints From Senior Employees and Chief Dustman Responds By Punishing Those Who Oppose Him**

41.     The procedure that Acting Chief Dustman employed to promote his friend failed to comply with policy and denied opportunities to older, veteran officers.

42.     The promotion of a Sergeant directly to Major resulted in a series of complaints from officers on the command staff.  Specifically, several high-ranking officers raised concerns related to skipping ranks and the decision to pass qualified candidates with higher ranks.

43.     Upon information and belief, the City's Personnel Director, who was not involved in the hiring process, investigated the process used to promote Chief Dustman's friend from Sergeant to Major and found that the process failed to comply with the City's Policies and Procedures and that she could not support the promotion.

44.     Nevertheless, the promotion was approved by City Manager Zach Walker despite suspected objections by the Personnel Director.

45.     Once Chief Dustman was able to manipulate the hiring process, he used the process to promote on the basis of gender and not merit.

46.     In response to the complaints lodged with the human resources department, Acting Chief Adam Dustman began threatening senior officers, who had raised concerns regarding the hiring process, claiming he would institute an internal affairs investigation complaint against officers for questioning his orders regardless of whether the orders violate policy or law.

47.     Acting Chief Dustman followed through on his threat by opening an internal affairs investigation against a major, who was closely aligned with Deputy Chief Ken Jarnagin.

48.     Several senior officers filed Charges of Discrimination alleging age discrimination, policy violations and retaliation.

7

49.     Perhaps, not surprisingly, despite having purportedly undertaken a nationwide search for the next Chief of Police, the City of Independence conveniently appointed Acting Chief of Police Dustman to the position on August 8, 2022.

## Chief of Police Adam Dustman Announces Openings for Two Deputy Chief of Police Positions

50.     After being promoted to Chief of Police, Adam Dustman undertook to promote two officers to open deputy chief of police positions.  As with the promotion of his friend from Sergeant to Major, Chief Dustman manipulated the hiring process to stack the deck in favor of his preferred candidates.

51.     Rumors were swirling at this time that Chief Dustman intended to hand-select officer Michelle Sumstad, a female, for one of the Deputy Chief positions.

52.     Upon information and belief, Chief Dustman believed that promoting a woman officer might improve the Police Department's political standing with the City and that this might assist with obtaining the approval for a new headquarters. Thus, _merit_ was not a factor in the decision-making process, instead, the focus was on the historic nature of the first female member of the command staff regardless of qualification.

53.     To be clear, Officer Sumstad held no rank in the Independence Police Department. She did not have any command experience and had never been promoted to Sergeant or any rank above sergeant, yet, she was Chief Dustman's choice as the second highest ranking officer in the City.

54.     On February 7, 2023, Chief Dustman announced two openings for the Deputy Chief of Police Positions.

8

55.     The positions were posted for three days and applications had to be submitted before the end of the third day.

56.     Upon information and belief, this short posting violated the hiring process.

57.     Additionally, at this point in time, the City was relying on a temporary human resources director.

58.     Plaintiff applied for the position of Deputy Chief of Police.

59.     Plaintiff met the minimum qualification for the position of Deputy Chief according to the February 7, 2023, job posting.

60.     The limited posting period likely served to benefit Officer Michelle Sumstad because, upon information and belief, she had been made aware of the posting and the intent that she would be promoted by Chief Dustman ahead of the job being posted.

61.     Thereafter, and without the assistance of the Temporary Personnel Director, Chief Dustman, it is believed, unilaterally reviewed the 11 applications received and selected five candidates to be interviewed.

62.     The City of Independence Personnel Policy implementing the merit-based selection process requires that any test or interview process employed be *open to all qualified candidates*.

63.     Thus, according to Policy, Deputy Chief Dustman was required to interview the 11 candidates.  However, as will be detailed, the fix was in.

64.     City Policy provides that only Personnel Director may disqualify a candidate on the basis that he or she is not qualified.

65.     When a candidate is disqualified, they are to be provided notice and a right to appeal.

9

66.     Plaintiff was disqualified by the Chief of Police in violation of policy and was denied any right to appeal his disqualification.

67.     In fact, Plaintiff was not made aware of his disqualification as a candidate until the hiring of Michelle Sumstad was announced.

68.     This process violates the City's Policies and Procedures because the Personnel Director is empowered to receive and review applications.  By policy, all qualified applicants are to be interviewed.

69.     Instead, Chief Dustman interviewed only 5 candidates unilaterally rejecting 6 candidates.  Upon information and belief, at least 5 of the disqualified candidates met the minimum qualifications.

70.     City Policy further requires that City representatives conducting the interviews for a position not be biased or have an interest in who is ultimately selected for the position.  Despite this requirement, Chief Dustman, his recently promoted friend and a representative of the City Manager's office were selected to participate in the interviews for the Deputy Chief Position.

71.     Upon information and belief, none of the interviewers revealed to the other members of the interview panel that there was bias on the part of those conducting the interviews.  Additionally, Chief Dustman withheld critical information from the other panelist.  For instance, the other interviewers were not made aware that qualified candidates had been denied an interview.  Additionally, Chief Dustman withheld information regarding disciplinary action taken against one of the applicants.

72.     Accordingly, by exercising complete control over the application, selection and interview process and by excluding the Personnel Director, the Chief of Police could manipulate the City's Merit-based hiring system.

10

73.     Upon information and belief, on February 3, 2023, before the Deputy Chief position was even posted, Chief Adam Dustman received an email from the Secretary of the Fraternal Order of Police (hereinafter "FOP") that strongly suggested a decision on who would be promoted to the Deputy Chief positions had already been made and that the selection would be Officer Michelle Sumstad and Captain Jason Petersen.

74.     Upon information and belief, Chief Dustman did not clarify that the decision related to the promotion had not been made and he certainly did not suggest that the promotion process would comply with the City Charter. Instead, Chief Dustman thanked the author of the email and said that the author had made his day. Chief Dustman suggested that the author of the email was great man. Accordingly, Chief Dustman's response made it clear that any hiring process associated with the Deputy Chief position was a sham.

75.     Upon information and belief, Chief Dustman did not limit his communication to the FOP secretary, he also forwarded the email related to the hiring decision for the yet to be posted Deputy Chief Position to City Manager Zach Walker with an enthusiastic message. Thus, Chief Dustman sent the unmistakable message to City Manager Zach Walker that his preferred candidates were poised to be selected even before the position was even posted.

76.     Upon information and belief, City Manager Walker did not direct Chief Dustman to clarify that the position would be competitively selected in accordance with the City Charter and Personnel Policies and Procedures.

77.     In addition to forwarding this February 3, 2023, email to City Manager Zach Walker, Chief Dustman also forwarded the message directly to Michelle Sumstad and Jason Petersen with enthusiastic comments related to their promotions for a position that was yet to be posted.

11

78.     Upon information and belief, Chief Dustman did not send a similar message to any other applicant for the deputy chief position.

79.     After the Deputy Chief position was posted Michelle Sumstad and Jason Petersen were selected as the Deputy Chiefs.

80.     After the promotion of Michelle Sumstad and Jason Petersen, City Manager Zach Walker sent an email to the City Council for the City of Independence.  In this email, City Manager Walker proclaimed that for the first time the selection of the Deputy Chiefs for the Independence Police Department complied with the City Charter and Merit based hiring system.  City Manager Walker further proclaimed that the hiring was historic in that a female was promoted to command staff for the first time in the City of Independence.

81.     The hiring process employed by Chief Dustman in selecting the Deputy Chief did not comply with the City Charter or the Personnel Policies and Procedures.  Specifically, Chief Dustman unilaterally de-selected qualified candidates in violation of the Personnel Policies and Procedures.  This resulted in qualified candidates being denied interviews in violation of the Personnel Policies and Procedures, a fact that had to have been known by City Manager Zach Walker despite his representation to the City Council.

82.     Specifically, upon information and belief, City Manager Zach Walker received the email from Chief Dustman on February 3, 2023, that all but announced that Michell Sumstad and Jason Petersen would be promoted to the Deputy Chief positions. Accordingly, City Manager Walker knew that the selection process was a sham and failed to share that information with the City Council, instead choosing to represent the process as compliant with the City Charter and Procedures.

12

**Numerous Complaints Regarding the Deputy Chief Promotion Process Were Filed With the City's Understaffed Human Resources Department**

83.     On February 15, 2023, Plaintiff filed a grievance in accordance with the City's Personnel Policies and Procedures alleging that the promotion process for hiring the position of deputy Chief of Police was discriminatory and violated City Policy.

84.     By Policy the City is to investigate complaints of discrimination. Presumably the point of this policy is that the City will take prompt, effective and remedial actions to prevent discrimination when it is discovered.

85.     On March 8, 2023, just days after filing his grievance, Plaintiff was called into Chief Dustman's office and was told that he was being offered the "stick and a carrot".

86.     Chief Dustman told Plaintiff he was getting the stick first and that he would be transferred to the detention facility and that Plaintiff was to undertake a study looking into issues at the detention facility.

87.     Chief Dustman had previously assigned another member of the command staff to perform this work, therefore, the assignment was unnecessary, was beneath the skill set of Plaintiff and was intended to punish Plaintiff for having filed a grievance.

88.     Upon information and belief, the prior officer assigned the review the detention facility had also filed a complaint.

89.     Chief Dustman has used transfers to the detention center as a means of punishing or minimizing those who engage in protected activity.

90.     As a result of this transfer, Plaintiff's income was reduced because in his new position we was no longer entitled to earn call out time.

13

91.     On March 9, 2023, after learning of the transfer to the Detention Facility, a Major approached Plaintiff and stated "you're a smart man you can probably figure out this is because of the complaint."

92.     On March 13, 2023, while speaking with the Captain, who would be taking over Plaintiff's position, Plaintiff was told that the Chief "wants to know if you're on his side."

93.     Since Plaintiff filed his grievance, the Chief goes out of his way to ignore Plaintiff. He does not acknowledge Plaintiff and does not communicate with Plaintiff.

94.     The City's Personnel Policies and procedures provide for a process to be followed if any employee feels he or she has been subjected to illegal discrimination, harassment or retaliation.

95.     The City is obligated to conduct an impartial investigation to discern whether there has, in fact, been discrimination, retaliation of harassment.

96.     The City of Independence represented to Plaintiff that it had retained a "third-party investigator" to evaluate Plaintiff's claims of discrimination.  This representation was false.

97.     Instead, the City now claims that its own lawyer investigated Plaintiff's grievance and that the investigation was conducted in anticipation of litigation.

98.     If this assertion is true, then the City failed to conduct an unbiased and impartial investigation.

99.     In fact, the City appears to have wholly failed to conduct any policy-based investigation into any of the complaints lodged because of the Deputy Chief position.

100.     Instead, under the guise of a neutral investigation, a lawyer representing the City of Independence conducted a purported investigation into Plaintiff's grievance.

14

101. Upon information and belief, the investigating attorney did not disclose to Plaintiff that she was representing the City in connection with pending litigation and further did not disclose to Plaintiff the fact that a conflict of interest exists between an attorney representing the City and the Plaintiff, who filed a grievance.

102. It is unclear whether the investigating attorney inquired whether Plaintiff was represented by counsel nor is there proof of compliance with Upjohn warnings.

103. The City's continued refusal to comply with its policies requiring investigation of claims of harassment and discrimination has resulted in a proliferation of discrimination and retaliation claims because illegal conduct continues unabated within the Independence Police Department.

104. Plaintiff was ultimately promoted to Major, but with the promotion he was permanently moved to oversight of the detention center, records and other departments resulting in a limited number of officers reporting to or being supervised by Plaintiff.

105. To limit the influence of officers who have filed complaints, the City of Independence has transferred officers to the detention facility and other administrative tasks.

106. Plaintiff is the direct supervisor of another officer who complained about the deputy Chief Promotional Process and was, thereafter, reassigned to supervise the detention facility and records department.

107. Since filing his grievance, Plaintiff has reached the 30-year mark with the Independence Police Department. It is traditional and customary for officers to receive a 30-year pin reflecting an incredible accomplishment and sacrifice on behalf of the City of Independence.

108. Plaintiff has never been provided with a 30-year pin recognizing his 30 years of service to the City of Independence.

15

109.    Recently, Plaintiff learned that he is being assigned responsibility for the animal control division.

110.    Typically, this division has interacted directly with either patrol or dispatch. This alignment is logical, however, the supervision of animal control is a job that is regarded as unpopular within the department. The acting Chief of Police, who is believed to be acting at the direction of Chief Adam Dustman, has directed that this department be assigned to Plaintiff. Moreover, the decision to assign this position was made without Plaintiff's input and, presumably, while he was on approved leave.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

111.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

112.    Plaintiff is male and is a member of a protected class pursuant to Title VII.

113.    Defendant has discriminated against Plaintiff and other similarly situated male employs by manufacturing a promotion process that was intended to promote a specific female employee in to portray a diverse police force.

114.    In violation of 42 USC §2000e-2(a)(l) and (2), the City used a discriminatory testing process that impermissibly eliminated at least 5 male candidates and failed to disclose information regarding the female candidate that may have affected the grading of the test.

115.    In doing so, Defendant's criteria for the promotions was sex and not job-related qualifications.

116.    Additionally, the City segregated and classified 5 male candidates in violation of policy and in an effort to ensure the hiring of an unranked, female officer.

16

117.    Further Defendant has discriminated against Plaintiff with respect to the terms and conditions of his employment based on sex including: (1) applying disparate standards for promotion based on gender, (2) denying promotional testing to qualified male applicants; (3) failing to disclose disqualification from testing to qualified male applicants and denying an appeal from disqualification of otherwise qualified male applicants; (4) failure to conduct an investigation into Plaintiff's grievances; (5) reduction in pay; (6) transfer to the detention facility; (7) isolation and limitation of contact with other officers and (8) denial of customary and traditional recognitions.

118.    Defendant's actions and/or inactions constitute a pattern and practice of unlawful employment discrimination.

119.    The actions of Defendant have been perpetrated by its agents, employees and servants and within the course and scope of their employment with Defendant.

120.    Defendant's intentional discriminatory conduct is malicious, willful, intentional and perpetrated in reckless disregard for Plaintiff's rights.

121.    Defendant has failed to cease discriminatory, retaliatory or harassing behavior and, instead, has taken steps to conceal these acts from the public or departments within the City responsible for the oversight of employment practices.

122.    Moreover, the intentional discriminatory conduct has been perpetrated by senior members of management within the City of Independence.

123.    Plaintiff has been damaged by Defendant's discriminatory conduct and treatment including past and future reductions in pay, diminished career potential, garden variety emotional distress, and the conduct warrants the imposition of punitive damages a.  Plaintiff is also entitled to equitable relief including, but not limited to, Orders requiring the Defendant to adopt policies

17

and procedures that mandate non-discriminatory hiring practices.  Further Ordering the Defendant to adopt policies requiring the punishment of retaliatory conduct, robust investigation of claims of discriminatory conduct and proper training to prevent future claims.

WHEREFORE, Plaintiff requests that the Court grant him judgment against Defendant in an amount that is greater than $75,000.00, punitive damages, attorney's fees, litigation costs and expenses and interest, for appropriate equitable relief, and for such other relief as this Court deems just and proper.

### COUNT II – RETALIATION IN VIOLATION OF TITLE VII

124.    A Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

125.    Plaintiff has engaged in protected activity under Title VII by, among other things, filing a grievance, raising concerns regarding employment decisions and processes followed by Defendant that Plaintiff believes to be discriminatory.

126.    Defendant has retaliated against Plaintiff after filing his grievances with: (1)  failing to disclose disqualification from testing to qualified male applicants and denying an appeal from disqualification of otherwise qualified male applicants; (2) failure to conduct an investigation into Plaintiff's grievances; (3) reduction in pay; (4) temporary, retaliatory transfer; (5) isolation and limitation of contact with other officers, (6) denial of customary and traditional recognitions and (7) assignment of supervision and control of the animal control department.

127.    Defendant's actions and/or inactions constitute a pattern and practice of unlawful retaliation pursuant to 42 USC 2000e-3(a).

128.    The actions of Defendant have been perpetrated by its agents, employees and servants and within the course and scope of their employment with Defendant.

129. Defendant's intentional retaliatory conduct is malicious, willful, intentional and perpetrated in reckless disregard for Plaintiff's rights.

130. Defendant has failed to cease retaliatory or harassing behavior and, instead, has taken steps to conceal these acts from the public or departments within the City responsible for the oversight of employment practices.

131. Moreover, the intentional discriminatory conduct has been perpetrated by senior members of management within the City of Independence.

132. Plaintiff has been damaged by Defendant's discriminatory conduct and treatment including past and future reductions in pay, diminished career potential, garden variety emotional distress, and the conduct warrants the imposition of punitive damages a. Plaintiff is also entitled to equitable relief including, but not limited to, Orders requiring the Defendant to adopt policies and procedures that mandate non-discriminatory hiring practices. Further Ordering the Defendant to adopt policies requiring the punishment of retaliatory conduct, robust investigation of claims of discriminatory conduct and proper training to prevent future claims.

WHEREFORE, Plaintiff requests that the Court grant him judgment against Defendant in an amount that is greater than $75,000.00, punitive damages, attorney's fees, litigation costs and expenses and interest, for appropriate equitable relief, and for such other relief as this Court deems just and proper.

<u>**COUNT III- HOSTILE WORK ENVIRONMENT**</u>

133. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

134. Plaintiff was subjected to unwelcome harassment and/or discrimination based on Plaintiff's complaints related to the promotional process used to hire a Deputy Chief of Police.

19

135.     Plaintiff's complaints made regarding illegal and discriminatory treatment motivated Defendant to harass and or discriminate against Plaintiff.

136.     Defendant subjected Plaintiff to harassment and/or discrimination on a continuous and ongoing basis.

137.     The Independence Police Department is permeated with discriminatory intimidation, ridicule, and insult that is severe and pervasive such that it alters the terms and conditions of employment and creates an abusive work environment.

138.     Specifically, the employees who have complained about discriminatory conduct perpetrated by the Independence police department have been subjected to retaliation including: (1) threat of internal affairs investigation, (2) transfers, (3) isolation; (4) exclusion from decision making process and assignments, (5) assignment to negative role, (6) silence treatment, (7) negative evaluations, (8) refusal to provide support or training; (9) failure to follow policies and procedures thereby denying employees certain privileges and conditions of employment; (10) filing internal affairs complaints, and (11) denial of the terms, conditions and privileges of employment.

139.     The harassment and/or discrimination has affected the terms, conditions and /or privileges of employment thereby creating a hostile work environment.

140.     The discrimination, harassment and hostile work environment has substantially interfered with Plaintiff's work performance.

141.     Defendant knew or should have known of the discrimination and/or harassment and/or hostile work environment to which Plaintiff was subjected.

142.     Defendant failed to implement prompt and effective remedial actions to end the discrimination, harassment, and/or the hostile work environment to which Plaintiff was subjected.

20

143.     Defendant did not investigate and/or failed to properly investigate Plaintiff's complaints of discrimination.

144.     Defendant's actions and/or inactions constitute a pattern and practice of unlawful employment discrimination and/or retaliation.

145.     The actions of Defendant have been perpetrated by its agents, employees and servants and within the course and scope of their employment with Defendant.

146.     The actions of Defendant have been perpetrated by its agents, employees and servants and within the course and scope of their employment with Defendant.

147.     Defendant's intentional discriminatory conduct is malicious, willful, intentional and perpetrated in reckless disregard for Plaintiff's rights.

148.     Plaintiff has been damaged by Defendant's retaliatory conduct and treatment including past and future reductions in pay, diminished career potential, garden variety emotional distress and other non-pecuniary loss. Plaintiff is also entitled to equitable relief including, but no limited to, Orders requiring the Defendant to adopt policies and procedures that mandate non-discriminatory hiring practices. Further Ordering the Defendant to adopt policies requiring the punishment of retaliatory conduct, robust investigation of claims of discriminatory conduct and that Plaintiff be provided the training and placement that he is entitled to but for illegal conduct of the Defendant.

WHEREFORE, Plaintiff requests that the Court grant his judgment against Defendant in an amount that is greater than $75,000.00, punitive damages, for his attorney's fees, litigation costs and expenses and interest, for appropriate equitable relief, and for such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims set forth in this Petition.

Respectfully Submitted,

**KAPKE & WILLERTH, LLC**

 */s/ George E. Kapke Jr.*
George E. Kapke, Jr.   MO Bar #52114
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
Telephone:      (816) 461-3800
Facsimile:      (816) 254-8014
ted@kapkewillerth.com
**ATTORNEY FOR PLAINTIFF**

22